UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Costa Precision
Manufacturing Corporation,
    Plaintiff

    v.                                  Civil No. 06-cv-332-SM
                                      Opinion No. 2007 DNH 070
Edward Farris; Farris
Consulting; Matrix
Aerospace, Inc.,
    Defendants

**O R D E R**

Plaintiff Costa Precision Manufacturing Corporation ("Costa" or "the Company") brought this suit against Edward Farris individually ("Farris"), Farris Consulting, and Matrix Aerospace, Inc. ("Matrix"), alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., the Stored Communications Act, 18 U.S.C. § 2791 et seq., and a number of discrete state common law claims, all arising out of Farris's prior employment with Costa. Defendants have asserted various counterclaims against plaintiff, alleging constructive discharge, interference with advantageous business relationships, defamation, and abuse of process. Before the court are plaintiff's motion to dismiss the counterclaims (document no. 13), and defendants' motion to amend its first counterclaim (document no. 16).

**The Legal Standard**

A party may file an amended pleading once, as a matter of right, prior to the filing of a responsive pleading, and thereafter, only with permission of the court.  See Fed. R. Civ. P. 15(a); see also Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).  Leave to file an amended pleading is to be "freely given when justice so requires," Fed. R. Civ. P. 15(a), unless the amendment "would be futile, or reward, inter alia, undue or intended delay."  Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994) (citations omitted).

Where, as here, the motion to amend is brought before discovery is complete, the court considers whether a proposed amendment is futile by applying the standard applicable to motions to dismiss.  Fed. R. Civ. P. 12(b)(6); see Hatch v. Dep't for Children, 274 F.3d 12, 19 (1st Cir. 2001) (explaining that a proposed amended complaint is not futile so long as it "sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory"); see also Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).

A claim is subject to dismissal under FED. R. CIV. P. 12(b)(6) when the plaintiff "fail[s] to state a claim upon which relief can be granted."  The inquiry under Rule 12(b)(6) is limited, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). All facts pled in the complaint are accepted as true and inferences are drawn in the light most favorable to the plaintiff. See, e.g., Citibank v. Grupo Cupey, Inc., 382 F.3d 29, 31 (1st Cir. 2004) (quoting TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)).  But, claims consisting of "bald assertions" or "unsupportable conclusions" will be rejected.  United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004) (quoting Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002)). "A district court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if 'it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

**Background**

The facts, taken from the pleadings and construed in the light most favorable to Farris are as follows.

Costa, based in Claremont, New Hampshire, manufactures complex molds and models for the aerospace and defense industries. Farris began working for Costa in 1991 as a computer programmer. In 1993 he was promoted to general manager and assumed responsibility for the Company's day-to-day operations. Under Farris's direction, Costa enjoyed considerable financial success, which was shared with Farris in the form of discretionary bonuses and ownership shares in the Company. Although Farris officially reported to then Company president and chief executive officer Edward Zielinski, Farris was subject to very little direct supervision.

Farris often worked irregular hours at the Company, as he would frequently work on various computer programming tasks well into the evening, returning to work in the late morning of the following day. Farris, however, operating under the name Farris Consulting, frequently did programming work, and billed Costa separately for, programming work. Farris Consulting invoices went directly to Costa's accounting staff for payment.

Although the timing is unclear from the record, at some point during his employment with Costa, Farris founded Matrix, which, like Costa, constructs models and molds for the aerospace and defense industries. Matrix often handled Costa's excess work — that Costa allegedly was unable to accommodate. In doing so, Matrix would occasionally use Costa's quality inspection and control equipment. In September of 2003, Costa entered into an agreement with Matrix under the terms of which the Costa Pattern Shop was moved into Matrix's facilities. Subsequently, the two companies occasionally shared staff and tools.

Costa also entered into a lease agreement with Farris's friend, John Welsh, for equipment that Costa required for its production work. Although the lease persisted for four years, when Costa became unable to make the required lease payments, Farris moved the machine to Matrix's facilities. Additionally, Farris, and his friend Welch, were co-owners of Kerrville Co., Inc. ("Kerrville"), a holding company formed to facilitate the joint ownership of an airplane. Costa, at Farris's direction, occasionally paid Kerrville for use of the airplane.

Sometime during Farris's tenure as its general manager, Costa began to suffer financially. In July of 2005, Zielinski

became ill.  He was replaced by James Pelletier, a management consultant, who was asked to analyze the company's operations and finances to determine the cause of the Company's declining performance.  Nearly a year later, in May of 2006, Pelletier told Farris that his involvement with Matrix was a problem, and that Farris would have to sell or close Matrix to maintain his employment with Costa.  Pelletier also intimated that Costa would fire Farris if he continued operating Matrix, and noting that Farris would not want to have Pelletier as an enemy.  Farris was also told that he should consider his family and the possibility that he might "lose everything" if he continued to operate Matrix.  Construing Pelletier's statements as threats, Farris left Costa.

In July and August of 2006, after Farris left Costa, he accessed Costa's proprietary computer systems to perform work for Matrix customers, customers who had previously been Costa's customers.  Matrix employs a number of former Costa employees, and several other Costa employees are seeking positions with Matrix.

Farris's departure, subsequent defections of Costa employees to Matrix, and other related conduct, led Costa to file this

suit, on September 7, 2006. Count I alleges violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq., and Count II alleges violations of the Stored Communications Act, 18 U.S.C. § 2701, et seq. The remaining counts[1] allege a number of state common law claims, including breach of the duty of loyalty (Count III), unjust enrichment (Count IV), unfair and deceptive trade practices (Count V), interference with advantageous business relations (Count VI), defamation (Count VII), destruction of property (Count VIII), and breach of contract (Count XI). Costa seeks disgorgement of Farris's and Matrix's profits (Count IX), or, imposition of a constructive trust on those profits (Count X). Costa also seeks to enjoin Farris and Matrix from accessing Costa's proprietary computer system (Count X*), publicly making misrepresentations about Costa (Count XI*), and from continuing to compete with Costa (Count XII).

As noted earlier, defendants have asserted counterclaims for constructive [wrongful] discharge (Count I), interference with Matrix's advantageous business relationships (Count II),

---

[1] An apparent typographical error in plaintiff's complaint has resulted in two counts being numbered "X" and two counts being numbered "XI." The court will refer to plaintiff's second "Count X" (injunction) as "X*" and the second "XI" (injunction) as "XI*."

defamation (Count III), and abuse of process (Count V). Defendants also seek an injunction (Count IV) to stop Costa from making "improper statements" about Matrix, Farris, and this litigation.

**Discussion**

Costa moves to dismiss the defendants' counterclaims pursuant to FED. R. CIV. P. 12(b)(6). With respect to Count I, Costa asserts that the claim is facially deficient because the defendants fail to plead each of the essential elements of a constructive [wrongful] discharge claim. Costa argues that the other claims are barred by the litigation privilege.

I.   Count I

In response to Costa's motion to dismiss, defendants have moved to amend Count I to more fully articulate the elements of a constructive [wrongful] discharge claim. Costa objects, arguing that the proposed amended claim is futile. See Steir, 383 F.3d at 12 (a court need not grant a motion to amend if the amended pleading is futile). Because the standard applicable in determining whether a proposed amendment is futile is the same as that used to determine whether a claim should be dismissed, see

Hatch v. Dep't for Children, 274 F.3d 12, 19 (1st Cir. 2001), the court considers both issues together.

"Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign." Porter v. City of Manchester, 151 N.H. 30, 42 (2004) (citing Karch v. BayBank FSB, 147 N.H. 525, 536 (2002)).  But, "'[r]elatively minor abuse of an employee is not sufficient for a constructive discharge.'" Id. (quoting 2 M. Rothstein et al., Employment Law § 8.7 at 258 (1999)).  "'Rather, the adverse working conditions must generally be ongoing, repetitive, pervasive, and severe." Id. (citation omitted).

Farris asserts that Pelletier's statements about Farris's continued involvement with Matrix were threatening and "motivated by bad faith, retaliation and malice," (Def.'s Amended Answer 10), and, were the type of statements that would force a reasonable person to resign.  Farris further asserts that "Pelletier made it clear to defendant that such conduct would be ongoing, repetitive, and pervasive" (Def.'s Amended Answer 10).[2]

---

[2] There is some irony to Farris's constructive discharge claim, as it seems that Pelletier's primary objective in making

9

Taking the facts set forth in his pleading as true, as is required when considering a motion to dismiss, Farris has failed to adequately plead the elements necessary to establish a viable cause of action. First, and critically, there is no assertion that the alleged "constructive discharge" was "wrongful" in any legally redressable sense. Beyond that, the pleading falls short in describing a constructive discharge. Farris describes only one instance of allegedly abusive conduct and offers no indication that similar conduct had occurred previously. Moreover, although Farris alleges that he inferred that Pelletier's conduct would continue, nothing suggests that the threatening conduct had, in fact, been ongoing, repetitive, pervasive, or even severe.

Simply put, the proposed amended Count I fails to allege that Pelletier's conduct consisted of anything more than commonplace, though perhaps socially objectionable, conduct that is generally excluded from notions of "constructive discharge." Farris's proposed amended Count I thus fails to state a cause of

---

the allegedly "threatening" statements was to <u>keep</u> Farris as an employee at Costa, by encouraging him to abandon his apparently competing involvement with Matrix.

action and is, therefore, futile. Accordingly, Farris's motion to amend (document no. 16) is necessarily denied.

Farris's original, unamended Count I also fails to state a claim because, like the proposed amended version, the allegations do not describe a wrongful discharge, or breach of employment contract, as the case may be.

## II.   Counts II-V

Counts II-V of Farris's counterclaims consist of one or two sentences that describe, in conclusory fashion, the general nature of each cause of action and a brief, generalized sketch of facts giving rise to the assertions.  In Count II, Farris alleges that Costa interfered with Matrix's relationships with suppliers and employees, but fails to describe facts which, if true, would constitute redressable interference.  Similarly, in Counts III and IV, Farris asserts that Costa has defamed Matrix to potential and current customers and employees, but does not identify statements that might qualify as defamatory.  Finally in Count V, Farris asserts that Costa filed its complaint in bad faith and that it knew or should have known that many of its allegations

were untrue and frivolous.[3]  But, again, Farris offers no support for the statement beyond the conclusory language of the pleading itself.

Although the federal notice pleading standard requires only "a short and plain statement of the claim showing the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2); see Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006), the court need not credit "'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'"  Aponte-Torres, 445 F.3d at 55 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).  In other words, the threshold for stating a claim under the federal rules "may be low, but it is real – and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1998).

---

[3] It bears noting that although pleadings generally need not be accompanied by an affidavit, see FED. R. CIV. P. 11(a), Costa's pleading was, in fact, verified, and thus the factual allegations set forth are afforded the same weight as if contained in an affidavit.  See Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991) (explaining that a verified complaint is the functional equivalent of an affidavit to the extent that it satisfies the standards set forth in Rule 56(e)).  Defendants argue that the allegations in plaintiffs' pleading are untrue and frivolous, but do not identify which is which.

Farris's counterclaims fall somewhat short of the minimum pleading threshold. Accordingly, Costa's motion to dismiss defendants' counterclaims is necessarily granted as to Counts II-V.

Given the early stage of this litigation, and the absence of prejudice to plaintiff, defendants should be afforded an opportunity to reconsider the operative facts and candidly assess whether counterclaims of sufficient legal merit exist, and if so, an opportunity to fully plead them.

### Conclusion

Defendants' motion to amend first counterclaim (document no. 16) is denied. Plaintiff's motion to dismiss defendants' counterclaims (document no. 13) is granted, and defendants' counterclaims are dismissed, but without prejudice to refiling an amended answer asserting viable claims. The amended pleading shall be filed within thirty (30) days of the date of this order, or not at all.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 29, 2007

cc:  Marc R. Scheer, Esq.
     Wayne F. Dennison, Esq.
     Mark H. Puffer, Esq.